

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

FTB:PP/SKW
F. #2021R00019

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 8, 2024

By ECF

The Honorable Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    United States v. Quandelle Joseph
                  Criminal Docket No. 23-306 (DLI)

Dear Judge Irizarry:

      The government respectfully submits this letter in advance of defendant Quandelle Joseph's sentencing hearing, which is scheduled for July 30, 2024.  For the reasons set forth below, the government respectfully submits that a sentence within the Guidelines range of 30 to 37 months' imprisonment should be imposed in this case.

I.      Background

      The Federal Bureau of Investigation and the Department of Justice's Office of Inspector General have been investigating correction officers at the Metropolitan Detention Center ("MDC") who have received bribes in exchange for smuggling drugs and other contraband into the MDC.  See Presentence Investigation Report ("PSR") ¶ 5.  As part of the investigation, law enforcement agents reviewed surveillance video, telephone and financial records and interviewed correction officers and incarcerated individuals.

      The defendant was hired by the federal Bureau of Prisons ("BOP") as a correction officer in May 2020.  Id. ¶ 7.  Within months of joining the BOP, the defendant accepted bribes on multiple occasions in exchange for smuggling contraband into the MDC.  For example, on December 5, 2020, while the MDC was on lockdown, the defendant was working in the G43 housing unit.  However, the defendant left G43 with a bedroll – which consists of sheets, blankets, and other hygiene items typically provided to an inmate when they arrive at the facility – and brough it to an inmate's cell ("Inmate-1") in a different

housing unit. Because Inmate-1 had been at MDC for months and was not in the defendant's unit, and because there was a lockdown at the time, there was absolutely no reason for the defendant to open Inmate-1's cell and bring him a bedroll. Approximately four hours later, MDC staff conducted a search of Inmate-1's cell because an officer smelled marijuana emanating from it. Although no marijuana was found, MDC staff recovered a contraband cell phone from Inmate-1's cell. Text messages between the defendant and Inmate-1's associate showed that, in January 2021, the defendant requested $12,000 as payment for smuggling contraband to Inmate-1. Id. ¶ 8.

The evidence shows that the defendant also received bribes from other inmates. Another inmate ("Inmate-2") told law enforcement that the defendant smuggled in contraband, including cell phones, marijuana, and cigarettes, for an inmate in his unit ("Inmate-3") who resold the contraband within MDC. Text messages between Inmate-3's contraband phone at the MDC and the defendant confirm this information. For example, on January 26, 2021, the defendant texted Inmate-3 "[wasn't] no glasses in the bag," meaning that the bag of contraband that Inmate-3's associate had delivered to the defendant did not contain the glasses Inmate-3 wanted. Inmate-3 responded, "Fuck she forgot them in the crb shit I guess I get em next time." Later that evening, the defendant texted Inmate-3 "tighten up search comin clean phones out call logs n text n try to stash it." PSR Addendum ¶ 8a. In total, the defendant received at least two bribes totaling more than $20,000. PSR Addendum ¶ 8b.

On April 18, 2023, the defendant was arrested on a complaint charging him with accepting bribes as a public official. He did not make any post-arrest statements. On January 11, 2024, the defendant pleaded guilty to Count Four of the Indictment, which charged him with accepting bribes as a public official in violation of 18 U.S.C. § 201(b)(2)(C).

II.     Guidelines Calculation

The government agrees with the Guidelines range as set forth in the PSR:

| | |
|---|---|
| Base Offense Level (§ 2C1.1(a)(1))) | 14 |
| Plus: More than One Bribe (§ 2C1.1(b)(1)) | +2 |
| Plus: More than $15,000 in Bribes (§ 2B1.1(b)(1)(C)) | +4 |
| Plus: Public Official in Sensitive Position (§ 2C1.1(b)(3)) | +4 |

| | | |
|---|---|---:|
| | Minus: Zero Point Offender (§ 4C1.1) | -2 |
| | Minus: Acceptance of Responsibility (§ 3E1.1) | <u>-3</u> |
| | Total: | <u>19</u> |

Based on a Criminal History Category of I, the Sentencing Guidelines calculate an advisory range of imprisonment of 30 to 37 months.

III.  Analysis

    A.  Legal Standard

A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).

Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [it] may not presume that the Guidelines range is reasonable.  [It] must make an individualized assessment based on the facts presented."  Id. at 50 (citation and footnote omitted).

Title 18, United States Code, § 3553(a) provides that, in imposing a sentence, a court shall consider:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed—

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)    to afford adequate deterrence to criminal conduct;

        (C)    to protect the public from further crimes of the defendant; [and]

        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Thus, the Court should first calculate the applicable Guidelines range, and then apply the Section 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

B. Section 3553(a) Factors

The government respectfully submits that a Guidelines sentence of 30 to 37 month's imprisonment is sufficient but not greater than necessary to achieve the goals of sentencing.

As an initial matter, the defendant's conduct was very serious. The BOP and the criminal justice system placed its trust in the defendant to administer properly the very important responsibility of guarding incarcerated individuals. However, the defendant chose to abuse that trust, betraying the duties he owed to the public, the institution, and his fellow officers by accepting bribes from multiple inmates to smuggle contraband, including cell phones and drugs, into the MDC. These contraband smuggling schemes, such as the one the defendant participated in, threaten the safety and integrity of jails.

Second, the defendant's conduct was not aberrational or a one-time mistake. The defendant accepted bribes on more than one occasion, and he began his criminal conduct shortly after becoming a correction officer. The defendant even warned his co-conspirator that a search was imminent and that he should hide the contraband phone and delete their text messages.

A significant sentence of incarceration would also be consistent with sentences imposed by other courts. Although some correction officers have received non-incarceratory sentences for similar conduct, numerous others have received prison terms. See United States v. Christian Mizell, 18-CR-060 (PKC) (E.D.N.Y.) (19 months' imprisonment for correction officer who received bribes and smuggled in contraband on at least two occasions); United States v. Simon Gordon, 19-CR-352 (CBA) (E.D.N.Y.) (eight months' imprisonment for receiving $10,000 in bribes to smuggle marijuana, tobacco, suboxone and a cell phone); United States v. Victor Casado, 18-CR-374 (RJS) (S.D.N.Y.) (36 months' imprisonment for receiving over $25,000 in bribes to smuggle alcohol and cell phones into federal jail; correction officer also implicitly threatened one of the inmates who paid him); United States v. John Grosso, 15-CR-207 (SRC) (D. N.J.) (correction officer who smuggled a cell phone and cigarettes into prison sentenced to 24 months' imprisonment). Recently, Judge Amon sentenced a Rikers Island correction officer who received more than $34,000 in bribes to a year and a day in prison even though the defendant had serious health problems. United States v. Patterson, 22-CR-196 (CBA).

4

Custodial sentences in these cases are necessary not only to provide just punishment but also to deter others from engaging in similar conduct. The receipt of bribes by correction officers to smuggle narcotics and other items has caused significant disruption to the MDC and the safety of incarcerated individuals. The Court should send a message to other correction officers, responsible for the safety of inmates and their colleagues, that the consequences of bribery will be significant.

IV.     Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the range of 30 to 37 months' imprisonment.

    Respectfully submitted,

    BREON PEACE
    United States Attorney

By:   /s/ Philip Pilmar
    Philip Pilmar
    Sara Winik
    Assistant U.S. Attorney
    718-254-6106/6058

cc:   Clerk of the Court (FB) (by ECF)
     Robert LaRusso, Esq. (by ECF)
     Ashtin Audin, United States Probation Officer (by E-mail)